First case this afternoon is Award v. Jacob Holding of Ontario LLC at 518-0332. Whenever y'all are ready. Let me start by saying that Justice Cates is not with us today. She is on the panel, however, and was unable to be here. So she will be participating in the decision and listening to the case as it's recorded. Thank you, Your Honor. May it please the Court. Counsel. My name is Craig Runyon, and I represent the Plaintiff Appellant, Dr. Philip Allward. We are here today following the trial court's ruling on cross motions for summary judgment. The trial court denied my client's motion and granted Jacob Holding's motion. This is a quiet title action brought by Dr. Allward asking the court to strike and remove two clouds on title. The first being a quick claim deed executed by Dr. Allward purporting to convey title to his son, Grant Allward, and his daughter-in-law, Carrie Allward. And then a subsequent mortgage that was granted by Grant and Carrie Allward in favor of Jacob Holding. These two documents were recorded outside the chain of title, and it is our contention that they are null and void and constitute clouds on title that can be removed by a quiet title action. This case also involves an Illinois land trust. As Your Honors know, there is extensive case law pertaining to Illinois land trusts, and we've cited relevant portions of that in our briefs. At the relevant time in this case, Dr. Allward was the sole beneficiary of a land trust that held title to the subject real estate. And this was, I think it's fair to say, this was a fairly conventional Illinois land trust in that it gave the beneficiary the power to direct the trustee with respect to the real estate held by the trust. An Illinois land trust places both the legal and the equitable title in the trustee. And this specific land trust explicitly stated that it is the intention of the instrument to place both the legal and equitable title in the trustee. Further, under well-settled Illinois law, a beneficial interest in a land trust is not a real property interest. Rather, it is a personal property interest. And again, this specific land trust explicitly stated as much. That being the case, Dr. Allward had no real property interest to quit-claim to Grant and Carey Allward. His quit-claim deed accomplished nothing. It follows, then, that Grant and Carey Allward had no right or interest in that real estate to pledge insecurity for the loan with Jacob Holden. The First District Appellate Court, in the Crooks v. Hendricks case, a case that was decided in 1992, addressed the issue at hand. It framed the issue there as, quote, may the beneficiary of a land trust convey his beneficial interest to a revocable trust, or anyone else for that matter, by executing quit-claim deeds. The trial court said no, the land trust beneficiary cannot do that, and the appellate court agreed and affirmed the trial court's decision. The Crooks case is good law, and its holding, we believe, should be applied to the facts of this case. Further, as spelled out in our reply brief, the Crooks case is not at odds with the Madigan line of cases cited by Jacob Holden. In short, a land trust beneficiary cannot convey title to real estate owned by a land trust via quit-claim deed. I am unaware of a single Illinois case holding that a land trust beneficiary can convey title to real estate via a warranty deed, let alone a quit-claim deed. To hold otherwise is contrary to decades of Illinois land trust law. In reviewing the trial court's judgment order and the arguments of Jacob Holden, I think it's fair to say that we kind of differ in how we look at this case in two principal ways. First of all, Jacob Holden and the trial court have made much about the intent of Dr. Allward in giving the quit-claim deed to his son and daughter-in-law. We actually do not believe that his intent is relevant to the question before the court. I believe that you look at the four corners of the document, the quit-claim deed, and I do not see any ambiguity that would allow the consideration of extrinsic evidence such as evidence of Dr. Allward's intent. Well, let me stop you there, and I understand you think the intent is irrelevant, but I do have a question as to basically unjust enrichment, and what happened with the $125,000 check? I believe that evidence, Judge, I think it's fair to say is not actually in the record. I believe that we alleged in our complaint and probably also in our motion for summary judgment that that $125,000 was not actually ever received by Grant and Cary Allward. In fact, that there were payments between Jacob Holden and Grant and Cary Allward, but again, this is not in the record, so I want to be careful, but I believe it's Grant Allward's contention that those were payments for goods tendered to Jacob Holden and that the loan, in fact, was never funded by Jacob Holden. Again, I want to be careful. I don't believe that that information is in the record, Your Honor, but that is my understanding of the position of the two defendants, Grant and Cary Allward, that were actually defaulted in this case previously. But that's in dispute? I think it's fair to say it's in dispute, yes. I'll ask your opponent. Sure. And furthermore, with respect to the intent, it was the intent to transfer a deed, correct? Yeah, that's true, Judge. And after it was found out, after Dr. Allward found out that it was held in trust, he reiterated that intent to his attorney, is that correct? That is correct, yes. And then there was a falling out, apparently? I don't believe that that evidence is in the record. I believe that that is speculation on the part of Jacob Holden and also on the part of the trial court. I don't believe that evidence is in the record. It has not and it has never been Dr. Allward's position that he did not intend at that time to transfer the real estate. He did intend to deed the property, which is what you would expect of a party that is executing a deed. I think it would be more problematic if he had an intent to retain the property, if he was trying to defraud his son-in-law, or if he had some other improper purpose. But his intent to do something does not make it so. In this instance, he intended to deed the property. He executed the quick lane deed. But he did so in an improper manner, and his actions were just insufficient to accomplish what he intended to do. You can intend to do lots of things, but it doesn't make them so. And that's effectively our position on the intent issue, if the court believes that you consider intent. Again, our initial position would be, I think intents are irrelevant. You look at the quick lane deed, the four corners of the document, and I think it's under Illinois law, applied to that quick lane deed, it's ineffective to transfer anything. If you get to the intent, again, I don't see it as something that puts Dr. Albright at a bad light. He's always contended that he intended to do this. He meant to do it, he just failed to do so by his actions. And so you don't think the fact that he did have the ability to direct the trustee to convey title makes any difference with respect to some of the cases cited by your opponent? Yeah, and I think that's the second other kind of major way that we differ from our opponent in the trial court in how we're looking at this case. Is it how we read that line of cases, starting with the Magnin v. Burr decision, including the Rosatos, Farley, and Ching cases. We do believe that the trial court misread and misapplied those cases to this case. Those cases hold that a land trust beneficiary can enter into a valid, legally enforceable contract to sell real estate that's held by a land trust. And that makes perfect sense because the land trust agreement says in it that the beneficiary has the power to direct the trustee to convey the title to the property. So that all makes sense. If you read those cases closely, though, they do not hold that a land trust beneficiary can actually be the one who executes the deed to transfer the property. That's a different thing. That's a different issue. That power is left solely to the trustee. Many of those cases, starting with Magnin, or including Magnin, rely on language from the Magnin court. And there the court said, it cannot be said that a beneficiary can never contract to sell the trust property. He may do so under appropriate circumstances, not because he has the power to convey title or to execute a deed, or because he is the agent of the trustee or stands in his stead, but because the trust agreement gives him control of the selling and the right to direct the trustee to convey title to whomever he designates. So, again, the holding of those cases, at least in our reading of them, is not that the land trust beneficiary can convey title to real estate. He cannot. Rather, the holding is that he can enter into a contract to sell the real estate. This distinction between the power of the contract to sell and the power to actually execute the deed to convey legal title, it may seem insignificant, but the court in Magnin also addressed that. It said, quote, there is a natural tendency to blend the power of the beneficiary with that of the trustee. But the nature of the land trust is such that if the trust is to be preserved, the powers of the beneficiary and the trust must be kept distinct. And that is what many decades of Illinois law pertaining to land trust has held and has followed. So we believe that the trial court and our opponent fail to recognize that important distinction. And in doing so, that the trial court entered judgment against our client and in favor of Jacob Holden. I guess the question, you know, becomes, isn't that unfair? You know, you could say, well, does that work in injustice on Jacob Holden? There's a number of reasons I don't believe that it does. We do not believe that Jacob Holden, under the facts of this case, should be rewarded for not following, you know, the basic steps that any reasonably diligent lender would take. Namely, you know, verifying that the parties they're accepting a mortgage from actually own the real estate that is being mortgaged. Jacob Holden could have avoided the whole mess by ordering a title search, but it failed to do so. The facts revealed by a title search likely would have stopped the lender dead in its tracks. I don't think any reasonable lender would have proceeded with the mortgage under the circumstances. And under Illinois law, Jacob Holden had constructive notice, which is sometimes referred to as record notice or inquiry notice. But the people he was dealing with, Grant and Kerry Allward, were not the owners of the property because it was a matter of public record. Based on the public records of Christian County, the land trust was the record owner of that real estate. So Jacob Holden could have ordered title work or otherwise examined the land records as any reasonable prospective mortgagee would have and should have done, but they didn't do so. And so I think that as outlined in our briefs, as a result of all that, they're not entitled to what is referred to as bonafide purchaser status. And since they did not take the steps that a reasonably approved lender would have done, we think they have to bear the consequences of that in action, essentially. In the inter-estate of Crooks v. Hendricks, does it suggest that had the Quikling deed mentioned, trust in any way, land trust, trust in any way, would that have made a difference? And I believe that, I think it was in the Crooks case that it did go a little further to talk about that. And I think it suggests that had the Quikling deed referenced the land trust, then... Even if it had not been written or signed off or executed by the land trust? Yeah, so let's say the land trust beneficiary is still the one giving the deed and executing it, but the deed on its face references the existence of the land trust. The case suggests that that would possibly and might well be sufficient to convey the land trust beneficiary's beneficial interest in the trust to the grantee of the deed. In this case, there's no such language on the face of the deed. And I don't think Crooks suggests that, I don't think Crooks holds that, but it certainly... But again, those are not the facts before the court with respect to the Quikling deed that we have here. I'm trying to understand how that would, what public policy does that serve to make that superior to what happened here when he had the right to direct it and even after the fact said, I do want to give the property to my son, after the fact that he was aware that there was a trust? Well, I think the public policy would... I don't know if there's a great answer to that question, but I think that the public policy would be to basically uphold the form and function of an Illinois land trust. To hold otherwise, I think, basically makes it such that an Illinois land trust doesn't really have any use or utility because you're not, it no longer serves any function if the land trust beneficiary can put land in a trust and then just deal as if it wasn't. I don't, so I guess... How is that any different with respect to how the beneficiary is effectuating the transfer? Oh, you were talking about the suggestion in the Cook's case? Yes. Okay, so I suppose if that is the case and the beneficiary gave his beneficial interest, it's basically putting the grantee under the deed in the shoes of the land trust beneficiary so that the grantees become the new land trust beneficiaries under the trust, but the land trust still holds legal and equitable title to the property. But when you do a deed such as the one that was done here, you're really only transferring whatever title or ownership you have. It's not like you have a warranty deed. So I'm just trying to work out in my mind what difference that makes. To be fair, I'm not sure that I fully understand the question. I just don't see any difference in what that accomplishes by allowing the transfer of title when you've just put in the language that there is a land trust in the document. I don't know how that accomplishes anything or changes any of the facts because it's actually what happened in fact in this case when Dr. Allwood became aware that the property wasn't a land trust. He still, through his attorney, exhibited the intent to give whatever interest he had to his son. So I'm not grasping the difference. Well, the Crooks case doesn't necessarily hold that had there been that language on there referencing the land trust that it would have automatically been acceptable. Not automatically, right. Correct. And it certainly doesn't suggest that it would have been effective to convey title to the real estate. It just says that it suggests that it may have been sufficient to convey the land trust beneficiary's beneficial interest under that trust. It wouldn't have affected how that looked from looking at the public records in the county where the deed was recorded. That would be a separate issue still. Okay. So getting back to it, we would then respectfully ask the court to consider the well-settled law pertaining to Illinois land trust, specifically observing the long-standing distinction between the powers of the land trust beneficiary and those of the trustee. And we further ask the court to apply the reasoning and holding from the Crooks case, which in our view directly answers this question. If the court has no further questions, we'll conclude by asking the court to reverse the trial court's ruling and to enter judgment claiming title in favor of Dr. Allard and to thereby rule as null and void the quit claim deed and the mortgage in question. Thank you. Thank you. Thank you. You'll have time to move on. Thank you, Your Honor. Brad Elwood on behalf of Jacob Holden. I want to start for a minute, if I could, and just address a few of the court's questions that have been asked of counsel. First, Your Honor, you asked about intent and if it matters, and you said, well, I don't think it matters. But we didn't find any cases that would say when you look at the context of the agreement that intent was a factor, but intent in this case is important because I think as you alluded to in some of your following questions, intent gives us context of what was intended to be done here. And I think that's very important when we look at the big picture when we ask ourselves questions about whether there was an unjust enrichment or reliance on that type of issue. So I think intent is important because it gives us context. Second, you had asked about the check, the money and the funds. To the best of my reading of the record, pages C115 and 116, you'll see a recording of the actual mortgage and a copy of the check for $125,000 that was issued to Grant in this case. I think it was Grant and his wife in this case. As to what it was used for, I don't think the record reflects that, but to the extent of my recollection of what's in the record, the check is in there and the mortgage is in there, and I would just put forth to the court, I don't know why anybody would execute a mortgage as a lending institution to say I lay claim to this property unless, in fact, they did make that loan. And likewise, the person whose property is impacted, it's just not going to allow that to happen unless something has happened to give that other entity my claim and interest. Third, there was some discussion by counsel about the idea of, well, if you uphold the child court's ruling in room favor of Jacob Poley in this case, you're going to turn the trust law upside down as to land trust, but I don't think so because regardless of what case that you look at, whether it's cited by me or my opponent, you'll see one thing that comes back over and over as a repeating point. The beneficiary, when they're given powers to do things, it's because what's vested in the language of the trust. In other words, if a beneficiary, such as here, a sole beneficiary, and they have the power to basically dispose of and deal with the property as they see fit, that power comes from the language of the trust agreement. If somebody who would be creating a trust agreement in the future would find this result troubling, then they would have the ability to tailor the language of that specific land trust in their favor so the land trust concept could continue on unabated. The other point I want to make is, and again, if I'm wrong on this, I apologize, but my recollection is that there was no recorded mortgage as respect to the land trust, and when we look at the land trust itself, it's hard to read, and so we offered the court in our appendix a copy of it translated. We believe it's an accurate reading, but if you look at page 813 of our appendix in our brief, you'll see some paragraph E says that the land trust is not to be recorded in the county where the property is. So if we go off of that and we look at counsel's argument, well, how did Jacob Holden not realize this? Well, Jacob Holden is looking at a deed that was given from Mr. Allwood to his son and daughter-in-law, and if we're looking at that, that's a valid title. Now, I don't know whether a title switch was done. That's not in the record, and I can't comment on that, but I would just put to the court's attention, once counsel can point to a copy of that deed as it was recorded, my recollection is that there was not one recorded, or at least if there was, it's not in our record. But, again, I'm just representing what I recall. When I look at this case, and I'll get into the Crooks case in just a second, but it seems that the worst possible case from my client would be an order from this court sending it back to either order Dr. Allwood to transfer the property, or because essentially he's a beneficiary who has authority to tell the trustee to transfer a title. So that's one option if the court doesn't accept the notion that a quick claim deed can transfer the title. Well, the other option would be for this court to say, well, the quick claim deed that was given transfers all interests, and that kind of leads me into the Crooks case, because in Crooks, it was really a question about whether the quick claim deed can transfer the beneficial interest. It didn't really say title. It talked about the beneficiary interest. I think that's the distinction that sets this case apart. Here, when we look at the actual language of the quick claim deed, it says the grantor does hereby grant, bargain, and sell all of the grantor's rights, title, and interest. And that's all you ever can transfer with a quick claim is what, in fact, you have the right to transfer. That's correct, and my point on that, Your Honor, is the word interest, and if I have a beneficial interest in a whatever it might be that we're discussing, and I execute a quick claim deed to transfer my interest, it would include that. So my point as far as the worst case scenario is, you could read this quick claim deed as transferring Dr. Allwood's interest as a beneficiary to his son, which would then give his son the ability to go back and tell the trustee, transfer the title to me. So, Your Honor, you made a really good point about what's the difference. This is a case that I look at and say, well, it's a distinction without a difference, and I think what we're really asking this court to do is to take a look at two lines of authorities. One of them is represented by the Rosacco's case, the Madigan case, let's see, a couple of other cases, Lambus, the Lampion, the Chang case, the Farley case, and what it says is that a beneficiary who has the exact type of power that this beneficiary here has as sole beneficiary can execute and enter into a valid contract to convey the trust property. And so what we're saying here, this is just an extension of that situation because the beneficiary has the sole control to tell the trustee, sell this property, transfer the title. And that's essentially what he's done in this case. And when we look at the cases that follow Madigan and we see that they're whittling away, they're saying, well, okay, now in the contract that you're doing to sell this property, Mr. Beneficiary, you don't have to specifically put language in there now ordering the transfer of title of the trustee, or you don't have to put specific language even representing the trust itself. They're reading that obligation of the beneficiary to communicate to the trustee into the agreement. That's what Farley does, that's what Lambus does, that's what Lampion does, that's what Chang does. And I think when we look at the trend that's announced in Farley, and they say specifically, the trend with land trust, and I'm going to read this so I don't get this wrong, is to expand the authority of the beneficiary to contract to sell the real estate owned in a land trust, and this is important too, particularly where enforcement is sought by purchasers unaware of the status of the beneficiary under the land trust. So here we've got a trustee, our beneficiary, who has this very significant amount of power as sole beneficiary to essentially direct this trustee to get the property where he says to be sent. He's got that property, so it's just a matter of semantics as to whether he says I can do it or you do it. It's the same result. So are we going to extend the mannequin line in cases along with that theory of the Farley case and consistent with the trend to allow us to accomplish that result here, or are we going to look at the Crooks case, which is really specifically limited to the notion that we're looking at can equipment be transferred in the interest? And I would say this. We always like to come to the court and cite a case from the court we're arguing in front of, but that really is a little bit more difficult here. Most of the cases that we're dealing with, in fact I think all the cases, are from other districts, and that's important here because you all understand the appellate jurisdiction. The first district can do what it wants, and you can look at that and say I don't think I agree with that, and I don't like the rationale, and I don't have to follow that. So what we're looking at here is a collection of cases, some from the first district that were earlier, cases from the second district, none of which were referred to in the Crooks case. It's the same case from another district that doesn't talk about all the landmark cases like Madigan, doesn't talk about King, doesn't talk about Farley. It ignores the concept of what is the trend as far as giving the beneficiary more authority, and then it makes a mistake. What it says is the Crooks court is wrong because it says, well, a person can't transfer an interest in a property they don't have. Well, this case only says that he can, and one of them is the Madigan case, and the cases that are cited within that, and the Lampion case that we cite, and they say specifically it's perfectly legal for a party to enter into a contract to sell property to which he presently does not hold title. Well, that's really what we've got here, and I know if we back up far enough and we look at claim D, you know, it's very similar to a contract, and in this case a natural extension of the Madigan case and all the other cases that we talked about for a beneficiary who's a sole beneficiary who has these types of powers, very powerful, then it makes sense to say this is the distinction without a difference, and we're going to say that the property was transferred, and uphold what the circuit court did here. And again, that gets me back to my point earlier about what the options are if the court doesn't necessarily agree with that. Okay, so what do we have here? Do we have an attempt to transfer where then we have to go back and say to Mr. Albert William, you made a contract basically to transfer this, and that was your clear intent. Go back and tell the trustee to transfer it, or we look at the quick claim deed and say you transferred your interest and all your interests, and that included your beneficiary interest, so your son and his wife have beneficiary interests, and they tell the trustee to transfer it. That's a worst-case scenario as far as we look at it, but we think it's perfectly consistent to uphold what the trial court did here in this case by looking at the Madigan case and all the cases that follow, and say this is a natural extension of that. The Crooks case does not prohibit us from making that action in this case. I want to ask you a question. Yes. What's happened with the default by Grant and Perry? They were found with default. They just never showed up, or? I would have to have counsel answer that because he was trying to answer that. I do not know. My understanding is he didn't show up, but I would defer to counsel to answer that. My last two points are this. The reliance aspect here, we certainly have admitted transfer between the father and the son and his wife. Nobody was aware of the existence of this trust at that time. We had a reliance by the son and his wife and a reliance by my client on the existence of title in the son's name and the wife's name. And so we've got that reliance aspect, and that's where we circle back to the notion of does intent matter. I think when we put it in the big context of what we're really looking at here, are we going to give Dr. Allwood an opportunity to back out of something if he feels that he wants to do that, or we could say, no, you made an agreement. You made an attempt under a contract to transfer that property, and we're going to hold you to it. You just can't walk away with it if you change your mind. There's a contract here. You agreed to transfer. That was your intent. You didn't do it. According to your argument, if you didn't do it, well, then you better order the trustee to do that. So when we look at this, we don't think that the client can clear title in their name for themselves. He either transferred it or he transferred his interest in it. And he has no right to the property. So we think that the trial court was correct here. It may not have articulated it in the way that this court will look at it, but I do think it does come down to which line are we going to look at. Are we going to follow the line that seems to be progressive and the line of cases that was completely ignored by Crooks, or are we going to follow Crooks, which has a number of distinguishing features? I think the better line is to follow Nagin in his cases. I think I've covered everything that I wanted to touch upon. Once there's any other questions, again, we ask the court to affirm the circuit court's order. Thank you. Thank you. Thank you. We have five minutes. Maybe we'll start with one to answer your question. Thank you, Your Honors. Yeah, and I'll start off by answering Justice's question there. Yes, Grant cleared all work in the trial court in order that the fault was entered. They never appeared at any of the hearings. They were served with summons, and they were defaulted based on their failure to file an answer in order to appear in the case. There's no other evidence in the record pertaining to that. Sometimes that kind of looks like collusion. I hate to use that word. It's kind of a hot-button word right now. I understand. And that was my reason that I wanted to know. Fair enough. And I may have misunderstood counsel's point, but I thought that he said that there was not a recorded mortgage. I don't know if I misunderstood him. The mortgage was, in fact, recorded in this case, and the mortgage shows up in the common law record at E-9. Perhaps he meant to say that what wasn't recorded was the trust? The trust itself. Yes. If that is what he meant to say, I think that is probably true. I think that there was a deed in trust. A deed in trust that was recorded. A deed in trust that was recorded. Okay. And we'll see that somewhere in the record? I'm not sure the answer to that question, Your Honor, standing here. Also, going back to another thing counsel said, he said I guess one option for the court might be for the court to send it back down and maybe for the trial court to direct Dr. Allward to convey the land to Grant and Carrie Allward in accordance with what is perceived as intent was. But this is not a case, by Jacob's ruling, where they sought specific performance. That's not really the question before the court. The only relief sought by any party here in this case was my client's complaint seeking the quiet title. So, again, I don't know that that question is really before the court with respect to a specific performance aspect. Obviously, we differ on how we view the Crooks case. I just think that Crooks didn't refer to the Madigan line of cases because, again, I don't think they address the same issue at all. To say that it's perfectly legal for a land trust beneficiary or for anybody else to enter into a contract to sell property that they may not have legal title to is one thing, and that is a fair characterization of some of the statements made in some of these cases. But that's not what we have here. In the Santee v. Day case, it does talk about a contract being a court claim deed. And if you look at that case, though, it also talks about the fact that for there to be a contract, there has to be a meeting of the minds. And in this case, I don't think there was a meeting of the minds between the parties. Didn't we all think that there was a good title that was being transferred? Well, I think we were certainly mistaken about that fact, I think. I mean, they were ultimately acting on the mistake of fact. And so, actually, in the Santee case, if you read it, they ultimately, in looking at that, they found that there was no, literally, the deed in question, no acceptance by the grantee. And in that case, they said, we don't have a meeting of the minds. So, and here, I also, I just don't see a meeting of the minds. There was a mistaken belief that the property was owned by the plaintiff when, in fact, it wasn't. It's also worth noting that in Santee, that was a warranty deed. And in our case, obviously, we have a court claim deed, and those are different under Illinois law, and they're also different for purposes of the after-acquired title doctrine. A warranty deed conveys after-acquired title. So if Dr. Oliver were to get title, as he now has, if it had been a warranty deed, standing here today, it's a totally different situation. But under the Conveyances Act, a court claim deed does not convey after-acquired title. If the legislature wanted a court claim deed to convey after-acquired title, it could have revised the Conveyances Act at some point. But under that provision of the Illinois Conveyances Act, we don't have a situation here where just because Dr. Oliver later had the property deeded out of trust to himself, that that vested title in Grant Kerry-Oliver. In fact, under that statute, it did not. Again, different situation if there was a warranty deed like there was in the Santee case. Thank you, Your Honors. Thank you. The court will take that into consideration and issue its ruling in due course.